IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| KIRK EVERETT KLUVER,<br><br>   Plaintiff,<br><br>v.<br><br>WALTER PESTERFIELD, *et al.*,<br><br>   Defendants. | Civil Action No.:  JRR-23-2974 |

**MEMORANDUM**

Plaintiff Kirk Everett Kluver is self-represented and incarcerated at Eastern Correctional Institution.  He filed a § 1983 civil rights complaint detailing alleged violations of his rights while incarcerated at Baltimore County Detention Center ("BCDC").  ECF No. 1.  Mr. Kluver was afforded an opportunity to supplement his Complaint, which he did.  ECF Nos. 4, 8.  The Court found Mr. Kluver's original Complaint and Supplement to be deficient, and thus Mr. Kluver was ordered to file an Amended Complaint.  ECF No. 9.  The Court received his Amended Complaint on March 27, 2024.  ECF No. 13.

Mr. Kluver filed a Motion to Proceed in Forma Pauperis (ECF No. 2), which the Court shall grant.  As such, the Court is obliged by 28 U.S.C. § 1915A to screen the Complaint and to dismiss any complaint that is "frivolous, malicious or fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A(b).  In deciding whether a complaint is frivolous, "[t]he district court need not look beyond the complaint's allegations . . . .  It must, however, hold the pro se complaint to less stringent standards than pleadings drafted by attorneys and must read the complaint liberally."  *See*

1

*White v. White,* 886 F.2d 721, 722-23 (4th Cir. 1989).  Mr. Kluver's Amended Complaint serves as the operative pleading in this matter, which the Court now reviews for sufficiency.

## I. Complaint Allegations

Mr. Kluver names several Defendants in this action: Walter Pesterfield, the Warden of BCDC; Dr. Barnes, the Medical Director at PrimeCare Medical, Inc.; Dr. Perpetua, a physician's assistant; Sergeant Ejoh; Officer Eharim; Officer Sherman; Officer Ayodeji; and Sergeant Paige. ECF No. 13 at 4-5.  He describes a series of events which occurred during his time at BCDC which allegedly violated his constitutional rights.  First, on September 27, 2022, Defendant Dr. Perpetua "used an exacto style scalpel to debride" Mr. Kluver's "right great toe." *Id.* at 6.  He describes that Dr. Perpetua completed the procedure on the floor, while balancing on the balls of her feet, "when she lost her balance and sliced open [Mr. Kluver's] toe, thus requiring sutures and causing [him] much pain and great angst." *Id.*  Thereafter, he alleges generally that he was repeatedly denied treatment with antibiotics, which ultimately resulted in the amputation of his toe on February 17, 2023. *Id.*

Next, he alleges that on December 1, 2022, he was housed with a cellmate who "engaged in various sexual acts with himself in plain view." *Id.* at 7.  Upon request by Mr. Kluver, Defendant Officer Eharim moved him to a cell "which had recently been doused in pepper mace spray." *Id.*  Mr. Kluver agreed to clean the cell and move there, but states there were other clean and empty cells available. *Id.*  The cell was covered in pepper spray and feces, and he was only given rubber gloves to use while cleaning. *Id.* at 7-8.  While in the cell, he used a toilet, and when he flushed the toilet "all the pepper spray that has accumulated in the toilet sprayed into [his] rectum and genitals," causing second degree burns. *Id.* at 8.  He was "writhing in pain" but Officers Eharim and Sherman "refused to allow" him to seek medical attention, and instead only allowed him "a 5

minute shower to clean off the pepper spray." *Id.*  Mr. Kluver eventually advised Officers Eharim and Sherman that he would like to return to his original cell but he was told "that was no longer an option." *Id.* at 7.  After obtaining the burns, Mr. Kluver obtained no medical attention until December 5, 2022, when an unnamed physicians assistant prescribed antibiotic ointment, which was only provided to Mr. Kluver "randomly." *Id.*  He was not given pain medication and maintains that he has "residual effects" from this injury "even to this day." *Id.*

On December 15, 2022, Mr. Kluver suffered "a crippling bout from osteoarthritis" which caused him to be bedridden until December 21, 2022, when he was moved to the medical unit. *Id.* at 9.  There, he was "finally given ibuprofen" for pain management. *Id.*  He alleges that "the medical ward was not fit to be used as a dog kennel. The floor and bunks were strewn with trash and human feces were slung onto the walls and ceiling." *Id.*  Mr. Kluver "prayed to God for a miracle" and by the following day, he was healed and able to leave the medical unit. *Id.*

On December 27, 2022, Mr. Kluver submitted "a 200 complaint form" to Defendant Sergeant Ejoh, but it was "never received by Capt. Cooper." [1]  *Id.*

On January 23, 2023, Mr. Kluver's "great right toe was debrided again with no signs of abating the infection." *Id.* at 10.  Although he asked for hospitalization and antibiotic treatment, it was not provided. *Id.*  His toe was ultimately amputated, which caused "great mental angst." *Id.* at 10-11.  On January 27, 2023, Mr. Kluver filed another 200 complaint form. *Id.* at 10.  On February 14, 2023, "the medical staff overdosed [Mr. Kluver] with insulin," which caused him to "be bed ridden and treated for several hours just after breakfast." *Id.*

Mr. Kluver alleges that on October 3, 2023, a cell security check was conducted while he was sleeping. *Id.* at 11.  Defendant Officer Ayodeji "was throwing the other inmate's articles at

---

[1] Mr. Kluver does not specify why the form needed to be provided to Captain Cooper.

the top of [his] bunk," which hit him in the head and caused a headache "for several hours." *Id.* Mr. Kluver completed a 200 complaint form about the incident, and Defendant Sergeant Paige interviewed him about the incident. *Id.* Mr. Kluver advised that he believed the action amounted to assault but was "satisfied" with Sergeant Paige's decision to "counsel the officer" because his "injury was insubstantial." *Id.*

Finally, Mr, Kluver alleges generally that medication is not properly or timely disbursed, nor are wounds properly cared for. *Id.* Further, he states generally that medical staff frequently document "inmate refusals" to accept medication or treatment when that is inaccurate. *Id.* He also maintains that attempts to report complaints are "routinely ignored or subverted." *Id.*

## II.    Analysis

Mr. Kluver has not stated a claim against several Defendants, and they will be dismissed from this action.

First, Warden Walter Pesterfield and Medical Director Dr. Barnes are not mentioned anywhere in the factual allegations of the amended complaint. Liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation. Further, it is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983). Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was

engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). As there are no allegations pertaining to Warden Pesterfield or Dr. Barnes claims against these defendants will be dismissed.

Additionally, Mr. Kluver has not stated a claim against certain correctional officers named as Defendants. First, Mr. Kluver's allegation that Sergeant Ejoh did not properly process a complaint form does not amount to a constitutional claim. Similarly, the only facts provided regarding Sergeant Paige indicate he investigated a complaint filed by Mr. Kluver. This, too, is insufficient to state a claim. *Brown v. Dep't of Pub. Safety & Corr. Servs.*, 383 F. Supp. 3d 519, 543–44 (D. Md. 2019) (holding inability to access grievance procedures does not state a constitutional claim); *see also Robinson v. Wexford*, No. ELH-17-1467, 2017 WL 4838785, at *3 (D. Md. Oct. 26, 2017) ("[E]ven assuming, arguendo, that defendants ... did not satisfactorily investigate or respond to plaintiff's administrative grievances, no underlying constitutional claim has been stated" because "'inmates have no constitutional entitlement or due process interest in access to a grievance procedure.'") (citations omitted); *Oliver v. Gray*, No. 7:09-CV-00004, 2009 WL 366150, at *2 (W.D. Va. Feb. 12, 2009), aff'd, 360 F. App'x 417 (4th Cir. 2010) ("Because a state grievance procedure does not confer any substantive right upon prison inmates, a prison official's failure to comply with the state's grievance procedure is not actionable under § 1983."); *Taylor v. Manis*, No. 7:20-CV-00121, 2021 WL 519903, at *4–5 (W.D. Va. Feb. 11, 2021)

(holding a prison official's failure to comply with a grievance procedure is not actionable under § 1983). Defendant Sergeants Ejoh and Paige are thus dismissed from this action.

Construing Mr. Kluver's Amended Complaint liberally, he has stated a claim that Dr. Perpetua rendered constitutionally inadequate medical care when treating his toe, that Officers Eharim and Sherman were deliberately indifferent to his medical needs following his exposure to pepper spray on his groin, and that Officer Ayodeji utilized excessive force against him. These claims shall be allowed to proceed at this time.

This Court issued an Order requiring the finance officer at BCDC to file a verified inmate account statement reflecting the average balance and deposits to Plaintiff's account. ECF No. 6. The statement has been received and indicates a zero balance in the account. *Id.* The initial partial payment shall therefore be waived.

Accordingly, it is this 9th day of May, 2024, by the United States District Court for the District of Maryland, hereby ORDERED that:

1. Claims against Defendant Pesterfield ARE DISMISSED and he is dismissed from this action;

2. Claims against Defendant Barnes ARE DISMISSED and she is dismissed from this action;

3. Claims against Defendant Ejoh ARE DISMISSED and he is dismissed from this action;

4. Claims against Defendant Paige ARE DISMISSED and he is dismissed from this action;

5. Payment of the initial partial filing fee SHALL BE WAIVED;

6. In accordance with the provisions of 28 U.S.C. § 1915(b)(2), Plaintiff SHALL MAKE monthly payments of 20% of each preceding month's income credited to his account as continued partial payments on the remainder of the $350.00[2] filing fee;

---

[2] As Plaintiff has been granted leave to proceed in forma pauperis under the Prison Litigation Reform Act, the additional $55 administrative fee shall not be assessed.

7. The parties ARE REMINDED that self-represented prisoner litigants need not serve pleadings on opposing counsel by mail pursuant to Local Rule 112.2(c) (D. Md. 2023);

8. The Finance Officer at ECI, where Plaintiff currently resides, SHALL FORWARD the above-described payments from Plaintiff's inmate account to the Clerk each time the amount in Plaintiff's inmate account exceeds $10.00 until the $350.00 filing fee is paid in full;

9. To aid Plaintiff and those persons having custody of Plaintiff in complying with the requirements of this Order, the Clerk SHALL MAIL a copy of this Order to the Finance Officer at ECI;

10. Except to the extent that payment is required under this Order, the Motion for Leave to Proceed in Forma Pauperis (ECF No. 2) IS GRANTED;

11. Plaintiff IS CAUTIONED that his failure to comply with this Order will result in dismissal of this case without further notice from the Court;

12. Plaintiff SHALL NOTIFY the Court of any change of address during the pendency of this action pursuant to Local Rule 102.1.b.iii (D. Md. 2023);

13. If defense counsel has any question regarding Plaintiff's indigency, counsel is to notify the Court;

14. The Clerk SHALL MAIL a copy of this Order to Plaintiff;

15. The Clerk SHALL ELECTRONICALLY TRANSMIT a copy of this Order, the Amended Complaint, and any Case Management Order previously issued in this case to:

    a. Counsel for PrimeCare Medical Inc., Kathryn E. Peters at kpeters@primecaremedical.com;

    b. Baltimore County Attorney's Office;

16. If electronic service on behalf of any Defendant is NOT accepted, counsel or a designated representative SHALL NOTIFY this Court in writing within 21 days from the date of this Order and the Clerk shall cause process to promptly issue for that Defendant;

17. If service is NOT accepted on behalf of any defendants because they no longer work for the Baltimore County Division of Correction or PrimeCare Medical Inc., counsel SHALL FILE under SEAL the last known home or business address for any such defendant for the sole purpose of service of process or, in the alternative, provide a statement within 21 days from the date of this Order regarding why the address/es is/are not available. Given confidentiality considerations, personal information regarding all home and business addresses shall immediately be placed under seal by the Clerk;

18. If service is accepted, counsel SHALL enter an appearance on behalf of the parties for whom service is accepted or notify the Court that counsel declines to represent Defendant(s) within 28 days from the date of this Order;

19. The Clerk SHALL OTHERWISE WITHHOLD service as to Defendants; and

20. For any Defendant for whom service has been accepted by counsel, that Defendant SHALL RESPOND to the Complaint **no later than sixty (60) days after the date on which counsel first receives a copy of the complaint** in accordance with Rule 12(a) of the Federal Rules of Civil Procedure and *In re State Prisoner Litigation*, Misc. No. 00-308, Standing Order 2012-01 (D. Md. 2012).

May 9, 2024                                  /S/

                                                       Julie R. Rubin
                                                       United States District Judge