IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KIRK EVERETT KLUVER,

    Plaintiff,

    v.

DR. PERPETUA,
SGT. EJOH,
OFC. EHARIM,
OFC. SHERMAN, and
OFC. AYODEJI,

    Defendants.

Civil Action No.: JRR-23-2974

**MEMORANDUM OPINION**

Plaintiff Kirk Everett Kluver, currently incarcerated at Eastern Correctional Institution ("ECI") and formerly incarcerated at the Baltimore County Detention Center ("BCDC"), filed this civil rights action pursuant to 42 U.S.C. § 1983 regarding alleged violations of his constitutional rights while he was held at BCDC. ECF No. 1. Because Mr. Kluver named only the Warden of BCDC as a Defendant without connecting him to the allegations, Mr. Kluver was directed to supplement his Complaint to name, as appropriate, additional defendants and provide further details regarding his claims. ECF No. 4. Mr. Kluver supplemented the Complaint, but only provided a list of Defendants. ECF No. 8. Consequently, Mr. Kluver was directed to file an amended complaint, which he did. ECF Nos. 9, 13. The Amended Complaint, which constitutes the operative pleading, alleges that Defendants failed to provide adequate healthcare and employed excessive force to assault him. The Amended Complaint names Walter Pesterfield, Warden of BCDC; Dr. Barnes, Medical Director at PrimeCare Medical, Inc.; Dr. Perpetua, a physician's assistant; Sergeant Ejoh; Officer Eharim; Officer Sherman; Officer Ayodeji; and Sergeant Paige

as Defendants. ECF No. 9. Because the Amended Complaint fails to state a claim as to Defendants Pesterfield, Barnes, Ejoh, and Paige, the claims against them were dismissed pursuant to 28 U.S.C. § 1915A(b). ECF No. 14.

On September 9, 2024, Defendant Azubuike Perpetual, PA-C filed a Motion to Dismiss, or in the Alternative, for Summary Judgment, as well as a Motion to Seal. ECF Nos. 19, 20. Mr. Kluver was advised of his right to file a response in opposition to the dispositive otion and the consequences of failing to do so. ECF No. 21. On November 13, 2024, Defendants Officer Eharim, Officer Sherman, and Officer Ayodeji ("County Defendants") filed a Motion to Dismiss. ECF No. 27. Again, Mr. Kluver was notified of his right to respond in opposition to the dispositive motion. ECF No. 28. Mr. Kluver did not respond to either Motion. The Court has reviewed the papers and finds a hearing unnecessary. Local Rule 105.6 (D. Md. 2025). For the reasons stated below, Defendant Perpetual's Motion to Dismiss, or in the Alternative, for Summary Judgment, construed as a motion to dismiss, will be granted. Her Motion to Seal will be granted in part. The County Defendants' Motion to Dismiss will be granted.[1]

I. BACKGROUND

Mr. Kluver's Amended Complaint makes allegations related to three separate events. First, he alleges that he suffered an infection in his toe, was not provided adequate medical treatment for the infection, and the toe was ultimately amputated. ECF No. 13 at 6, 8-10. Specifically, he alleges that on September 27, 2022, Defendant Perpetual "used an exacto style scalpel to debride [his] injured toe," "set up the procedure on the floor," "and "squatted over [his] injured toe [while] balancing herself on the balls of her toes when she lost her balance and sliced open my toe, thus

---

[1] The Clerk will be directed to amend the docket to reflect the correct names of Defendants Azubuike Perpetual, PA-C, Officer Eharim, Officer Sherman, and Officer Ayodeji as noted in their Motions. ECF Nos. 19, 27.

requiring sutures." *Id*. at 6.  Without naming Perpetual or any other Defendant, Mr. Kluver alleges that "[u]ntil [February 17, 2023] I was repeatedly denied due treatment with antibiotics and cleaning by the detention center and medical staff.  I begged for hospitalization and was repeated denied until the necessary amputation of my great right toe on [February 17, 2023]." *Id*.  Mr. Kluver makes additional allegations regarding his medical care in relation to osteoarthritis and diabetes, but he does not name any individual Defendant whom he holds responsible.  *Id*. at 9-10.

Next, Mr. Kluver alleges that on December 1, 2022, he requested to be moved to a different cell and was offered a cell in which pepper spray had been deployed during a cell extraction earlier that day.  ECF No. 13 at 7.  Mr. Kluver was advised that he would be required to clean the cell in order to move into it.  *Id*.  Mr. Kluver agreed, but soon discovered that the cell was covered in pepper spray and feces.  *Id*.  He then requested to return to his original cell but was told it was no longer available.  *Id*.  Mr. Kluver was provided rubber gloves, paper towels, and cleaning spray and proceeded to clean the cell.  *Id*. at 8.  Thereafter, he used the toilet and, upon flushing it, "all the pepper spray that had accumulated in the toilet sprayed into my rectum and genitals, causing 2nd degree burns." *Id*. Mr. Kluver alleges that Officers Eharim and Sherman "refused to allow [him] to obtain any medical attention and [he] was only allowed a 5 minute shower to clean off the pepper spray." *Id*.  He "lingered in anguish," until he saw a physician assistant on December 5, 2022, who diagnosed Mr. Kluver as suffering from second degree burns and prescribed antibiotic ointment. *Id*. Mr. Kluver was not provided pain medication.  *Id*.

Finally, Mr. Kluver alleges that on October 3, 2023, he was sleeping "during a cell security check conducted by Ofc. Ayodeji [when] he was struck in the head as she was throwing the other inmate[']s articles at the top of my bunk." ECF No. 13 at 11.  Mr. Kluver reported the incident and "advised that I did believe it was an intentional assault rather [than] just reckless and unsafe

3

negligence on the part of Ofc. Ayodeji. Sgt. Paige agreed to counsel the officer." *Id*. Mr. Kluver states that he "was satisfied with his resolution and [his] injury was insubstantial," yet he seeks compensation for this incident. *Id*.

In addition to these three events, Mr. Kluver makes various general allegations regarding his medical care, including that "the medical staff has not issued proper medication in a timely manner . . . nor do they properly main[tain] wound care;" conditions in the facility, including that "the medical ward cell was not fit to be used as a dog kennel. The floor and bunks were strewn with trash and human feces were slung onto the walls and ceiling;" and the grievance process, including that "attempt[s] to report complaints are routinely ignored or subverted, even to the removal of documents and complaint forms." ECF No. 13 at 9, 11. He provides no details regarding these allegations, and identifies no individuals responsible for them.[2]

## II. MOTION TO SEAL

Defendant Perpetual seeks to seal the memorandum in support of her dispositive motion and the attached exhibits. ECF No. 20. Perpetual states that all these filings contain or refer to Mr. Kluver's medical records. *Id*. at 1-2.

Local Rule 105.11 states in relevant part: "[a]ny motion seeking the sealing of pleadings, motions, exhibits or other documents to be filed in the Court record shall include (a) proposed reasons supported by specific factual representations to justify the sealing and (b) an explanation why alternatives to sealing would not provide sufficient protection." Local Rule 105.11 (D. Md. 2025). The rule balances the public's general right to inspect and copy judicial records and

---

[2] To the extent Mr. Kluver intends to bring conditions of confinement claims, medical claims regarding his osteoarthritis and diabetes, or due process claims regarding his access to the grievance process, any such claims fail. Liability under §1983 attaches only upon personal participation by a defendant in the constitutional violation. *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001). Mr. Kluver has not alleged that any of the named Defendants were personally involved in any of these issues nor has he alleged that any other individual is responsible. Therefore, he fails to state claims as to any of these allegations, and any such claims will be dismissed.

documents, *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978), with competing interests that sometimes outweigh the public's right to access. *In re Knight Pub. Co.*, 743 F.2d 231, 235 (4th Cir. 1984). The common-law presumptive right of access may be rebutted by demonstration that that "countervailing interests heavily outweigh the public interest in access." *Doe v. Pub. Citizen*, 749 F.3d 246, 265–66 (4th Cir. 2014) (quoting *Rushford v. New Yorker Mag., Inc.*, 846 F.2d 249, 253 (4th Cir. 1988)). The right of access "may be restricted only if closure is 'necessitated by a compelling government interest' and the denial of access is 'narrowly tailored to serve that interest.'" *Id.* at 266 (quoting *In re Washington Post Co.*, 807 F.2d 383, 390 (4th Cir. 1986)). "[S]ensitive medical or personal identification information may be sealed," although not where "the scope of [the] request is too broad." *Rock v. McHugh*, 819 F. Supp. 2d 456, 475 (D. Md. 2011).

The Court finds that Perpetual has provided a compelling reason, but the less restrictive approach of limiting access to these filings to the case participants satisfies the need to maintain Mr. Kluver's privacy as it pertains to his medical information. Accordingly, the Motion to Seal will be granted in part.

### III. STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) "tests the sufficiency of the claims pled in a complaint." *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019). To overcome a Rule 12(b)(6) motion, a complaint must allege sufficient facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

5

In evaluating the sufficiency of the plaintiff's claims, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in original) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)). However, the complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement[.]" *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). Accordingly, in ruling on a motion brought under Rule 12(b)(6), a court "separat[es] the legal conclusions from the factual allegations, assum[es] the truth of only the factual allegations, and then determin[es] whether those allegations allow the court to reasonably infer that 'the defendant is liable for the misconduct alleged.'" *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012) (quoting *Iqbal*, 556 U.S. at 1949–50).

*Pro se* complaints must be construed liberally and must be "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "Dismissal of a pro se complaint for failure to state a valid claim is therefore only appropriate when, after applying this liberal construction, it appears '*beyond doubt* that the plaintiff can prove *no set of facts* in support of his claim which would entitle him to relief.'" *Spencer v. Earley*, 278 F. App'x 254, 259–60 (4th Cir. 2008) (emphasis in original) (quoting *Haines v. Kerner*, 404 U.S. 519, 521 (1972)). Despite this liberal construction requirement, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). Courts are not required to "conjure up questions never squarely presented to them" or "construct full blown claims from sentence fragments." *Id.*

6

When ruling on a motion to dismiss, the Court may consider materials attached to the complaint without transforming the motion to dismiss into one for summary judgment. FED. R. CIV. P. 10(c). The Court may also consider materials attached to a motion to dismiss, so long as such materials are integral to the complaint and authentic. *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

Defendant Perpetual's Motion is styled as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment under Rule 56. A motion styled in this manner implicates the Court's discretion under Rule 12(d). *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436–37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). Under Rule 12(b)(6), however, a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." FED. R. CIV. P. 12(d); *Adams Hous., LLC v. City of Salisbury, Maryland*, 672 F. App'x 220, 222 (4th Cir. 2016) (*per curiam*). As is the case here, when a movant titles its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the Court's consideration, the parties are deemed on notice that conversion under Rule 12(d) may occur; the Court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5

7

C Wright & Miller, FEDERAL PRACTICE & PROC. § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id*. at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id*. at 165, 167.

Here, Defendant Perpetual's Motion can be resolved without consideration of extraneous materials. Therefore, the Motion will be construed as a motion to dismiss pursuant to Rule 12(b)(6). The County Defendants did not make an alternative motion for summary judgment; therefore, their motion is also resolved pursuant to Rule 12(b)(6).

## IV. DISCUSSION

### A. Inadequate Medical Care

To state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of a defendant, or her failure to act, amounted to deliberate indifference to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Anderson v. Kingsley*, 877 F.3d 539, 543 (4th Cir. 2017). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff suffered from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed either to provide it or to ensure it was available. *Farmer v. Brennan*, 511 U.S. 825, 834–37 (1994); *Heyer v. United States Bureau of Prisons*, 849 F.3d 202, 209–10 (4th Cir. 2017); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Objectively, the medical condition at issue must be serious. *See Hudson*, 503 U.S. at 9 (there is no expectation that prisoners will be provided with unqualified access to health care); *Jackson v. Lightsey*, 775 F.3d

170, 178 (4th Cir. 2014). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839, 840; *see also Anderson*, 877 F.3d at 544. Under this standard, "the prison official must have both 'subjectively recognized a substantial risk of harm' and 'subjectively recognized that his[/her] actions were inappropriate in light of that risk.'" *Anderson*, 877 F.3d at 545 (quoting *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004)); *see also Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997) ("True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."). "Actual knowledge or awareness on the part of the alleged inflicter … becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844).

1. **Defendant Azubuike Perpetual, PA-C**

Perpetual seeks dismissal of the Amended Complaint, or summary judgment in her favor, because the Amended Complaint 1) fails to state a claim for deliberate indifference to a serious medical need; 2) she is entitled to summary judgment because she did not knowingly disregard Mr. Kluver's serious medical need; and 3) Mr. Kluver failed to comply with the Maryland Health Care Malpractice Claims Act prior to filing suit. ECF No. 19-1.

Mr. Kluver asserts that on September 27, 2022, P.A. Perpetual lost her balance while performing a debridement on his toe and "sliced open [his] toe, thus requiring sutures." ECF No. 13 at 6. He alleges that Perpetual conducted the procedure on the floor of the office, rather than using the medical bed. *Id.* He further alleges that he was "repeatedly denied due treatment with

antibiotics and cleanings by the detention center and medical staff" until February 17, 2023 when his toe was amputated, but makes no additional allegations against P.A. Perpetual. *Id*. He does not allege that P.A. Perpetual denied him adequate medical treatment following the debridement on September 27, 2022, or had any responsibility to ensure that such treatment was provided.

Taken as true, Mr. Kluver's claim that P.A. Perpetual injured him while performing a procedure while balancing on the floor of the medical office rather than using the bed is properly construed as one for a state law tort to include possible negligence (or medical malpractice). The facts alleged do not support a finding that the actions of P.A. Perpetual amounted to deliberate indifference to a serious medical need. Even assuming that conducting the debridement procedure on the floor rather than the medical bed caused the "slicing" that resulted in sutures amounts to negligence or malpractice, it is not enough to support a constitutional claim of deliberate indifference to a serious medical need. "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it . . . [T]he Constitution is designed to deal with deprivations of rights, not errors in judgment, even though such errors may have unfortunate consequences." *Grayson v. Peed*, 195 F.3d 692, 695- 96 (4th Cir. 1999); *see also Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (describing the applicable standard as an "exacting" one). "[A]ny negligence or malpractice on the part of … doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference." *Johnson v. Quinones*, 145 F.3d 164, 166 (4th Cir. 1998) *see also Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) ("Deliberate indifference is more than mere negligence, but less than acts or omissions done for the very purpose of causing harm or with knowledge that harm will result."); *Russell v. Sheffer*, 528 F.2d 318, 318 (4th Cir. 1975) ("[M]istreatment or non-treatment must be capable of characterization as 'cruel and unusual punishment' in order to present a colorable claim . . . .").

While Mr. Kluver complains of continued inadequate medical care regarding his toe, he has not identified any other medical provider who would be subject to § 1983 liability; it is not sufficient to name "medical staff." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70-71 (1989). Because Mr. Kluver fails to state a constitutional claim of failure to provide adequate medical care against P.A. Perpetual, or any other individual, his claims as to this issue must be dismissed.

### 2. Officer Eharim and Officer Sherman

Mr. Kluver alleges that on December 1, 2022, he requested to move to a different cell. ECF No. 13 at 7. Mr. Kluver was offered the opportunity to move to a cell that had been recently pepper sprayed during a cell extraction if he agreed to clean the cell. *Id*. Mr. Kluver agreed to clean the cell, until he saw that the inside of the door was covered in feces. *Id*. He requested to return to his original cell, but officers, including Officer Sherman, advised that it was no longer available. *Id*. Mr. Kluver was then provided with rubber gloves, paper towels, and cleaning spray, and he proceeded to clean the cell. *Id*. at 8.

Upon finishing the cleaning, Mr. Kluver used the toilet. *Id*. He then flushed the toilet, at which point he realized that he had not previously flushed the toilet to remove any remaining pepper spray. *Id*. Consequently, pepper spray came into contact with his rectum and genitals causing second degree burns. *Id*. Mr. Kluver alleges that Officer Eharim and Officer Sherman refused to provide him with medical attention and that he was only allowed a five minute shower to remove the pepper spray. *Id*. He further alleges that he "lingered in anguish until [December 5, 2022]," at which point he was provided antibiotic ointment but no pain medication. *Id*. Mr. Kluver makes no further allegations against Officers Eharim and Sherman. While he states that he was not provided medical care for several days following the incident, he does not allege that

he requested medical care from Officers Eharim and/or Sherman, or anyone else, except immediately following the incident. He acknowledges that he was allowed to take a shower, but he does not state whether he informed the officers that the shower was not sufficient. Simply put, Mr. Kluver's allegation that Officers Eharim and Sherman chose to provide him with a shower rather than send him to medical after this incident does not state a constitutional claim. Even assuming without finding that second degree burns would be a serious medical need, there is no allegation or other reasonable basis to conclude that the officers knew the extent of his injuries or were deliberately indifferent to them. As such, Mr. Kluver's claims against Officers Eharim and Sherman must be dismissed.

### B. Excessive Force Claim - Officer Ayodeji

The Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." *Boone v. Stallings*, 583 F. App'x 174, 176 (4th Cir. 2014) (per curiam) (quoting *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996)). In cases involving allegations of excessive force, the Court must determine: (1) "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm" – the subjective component, *Thompson v. Commonwealth of Virginia*, 878 F.3d 89, 98 (4th Cir. 2017) (quoting *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992)); and (2) "whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious" – the objective component, *Boone*, 583 F. App'x at 176 (quoting *Williams*, 77 F.3d at 761).

To determine whether Officer Ayodeji acted maliciously or sadistically to cause harm, this Court must consider "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of any reasonably perceived threat;" and "(4) any efforts made to temper the severity of a forceful response." *Iko v. Shreve*, 535 F.3d

225, 239 (4th Cir. 2008) (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). The absence of significant injury alone is not dispositive of a claim of excessive force. *Wilkins v. Gaddy*, 559 U.S. 34 (2010). The extent of injury is one factor to consider in determining whether the force used was necessary in a particular situation, but if force is applied maliciously and sadistically, liability may not avoided simply because the prisoner had the good fortune to escape serious harm. *Id.* at 38.

Here, even taken as true, the allegations in the Amended Complaint do not state a claim of excessive force. Mr. Kluver alleges that on October 3, 2023, Officer Ayodji was throwing inmates' property at the top of his bunk as she conducted a security check. ECF No. 13 at 11. Mr. Kluver alleges that he was hit in the head with an unknown article and reported to another officer that he "did believe it was an intentional assault, rather than just reckless and unsafe negligence." *Id*. However, he does not describe Officer Ayodeji's actions in any way or even state what type of object hit him. He does not explain why he believes Officer Ayodeji intentionally threw something at him rather than accidentally hit his head; rather, he simply conclusorily alleges the act was intentional. Mr. Kluver acknowledges the incident could have been the result of "just reckless and unsafe negligence," but alleges without factual support that he "believes" the act was intentional. *Id*. He claims that he developed a headache of unknown duration or severity but does not claim to have needed or sought medical attention. *Id*. Mr. Kluver's allegation that Officer Ayodeji threw an unknown object at his bunk that hit him in the head, without more, is not sufficient to state a claim of excessive force. "[N]ot all undesirable behavior by state actors is unconstitutional." *Pink v. Lester*, 52 F.3d 73, 75 (1995) (citing *Paul v. Davis*, 424 U.S. 693, 701 (1976)). As such, Officer Ayodeji's Motion will be granted and the claim against her dismissed.

13

### C. State Claims

Mr. Kluver does not specifically state whether he intends to raise a state law medical malpractice claim against P.A. Perpetual. Nevertheless, Perpetual argues that this Court would not have jurisdiction over such a claim, because medical malpractice claims must first be presented to the Maryland Health Claims Arbitration Board before a complaint may be filed in court if the plaintiff is seeking more than $30,000 in damages. MD. CODE ANN., CTS & JUD. PROC. § 3-2A-02 et seq.; *Davis v. Frostburg Facility Operation, LLC,* 177 A.3d 709, 715 (Md. 2018). There is nothing in the record to suggest Mr. Kluver complied with this prerequisite.

Regardless, once the only potential federal claims are dismissed, this Court can decline to exercise supplemental jurisdiction over any remaining state law claims. 28 U.S.C. § 1367(c); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). Here, all federal claims in the Amended Complaint will be dismissed. Accordingly, any state law claims for medical negligence or medical malpractice will be dismissed without prejudice, as this Court declines to extend jurisdiction over same should Mr. Kluver intend to bring them here.

### D. Additional General Claims

## V. CONCLUSION

For the foregoing reasons, Defendant Azubuike Perpetual's Motion to Dismiss, or in the Alternative, for Summary Judgment (ECF No. 19), construed as a motion to dismiss, is granted. Defendant Perpetual's Motion to Seal (ECF No. 20) is granted in part. The County Defendants' Motion to Dismiss is granted. Any state law claims for medical negligence or medical malpractice are dismissed without prejudice. All other claims are dismissed.

A separate Order follows.

/S/

Date: August 18, 2025

Julie R. Rubin
United States District Judge